## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHANNON DANIEL BURT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:20-cv-01973-ACA** |
| | ] | |
| **CITY OF PLEASANT GROVE,** | ] | |
| **ALABAMA, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Before the court are two motions to dismiss the amended complaint, one filed by Defendant James Butler, an assistant district attorney ("ADA Butler") (doc. 24), and the other filed by the remaining defendants, City of Pleasant Grove, Alabama; Chief of Police Robert Knight; Lieutenant Daniel Reid; Corporal James Williamson; Corporal Mathew Stone; Sergeant Bill Vick; Sergeant Paul Roberts; Sergeant Alan Bagwell; Officer Ryan Knight; Officer first name unknown ("FNU") Kaylor; and Officer FNU Gulley (doc. 26). When referring to the individual police officers collectively, the court will call them "the Officers."

During an acrimonious breakup, Plaintiff Shannon Daniel Burt repeatedly called the police to report that her ex-boyfriend was taking items from and damaging her home. She eventually obtained a "protection from abuse" order (the "protective order") against the ex-boyfriend. When Ms. Burt went on a trip out of town, she left

two relatives at her house with a copy of the protective order.  After the ex-boyfriend appeared at Ms. Burt's house, the relatives called the police and showed the responding officers the protective order, but the officers required them to leave and allowed the ex-boyfriend to enter and take items from the house.  Neither the police nor the assistant district attorney pursued any investigation into or charges against the ex-boyfriend, prompting Ms. Burt to file this lawsuit, in which she asserts: (1) a state law claim for gross negligence against all defendants ("Count One"); (2) a federal claim for negligent hiring, supervising, and training against the City, Chief Knight, Lieutenant Reid, Sergeant Vick, Sergeant Roberts, Corporal Williamson, and ADA Butler for failing to properly hire, supervise, and train Sergeant Bagwell, Corporal Stone, and Officers Kaylor, Knight, and Gulley ("Count Two"); (3) a federal claim for unlawful seizure, in violation of the Fourth Amendment, against all defendants for assisting Mr. Spidell's burglary, trespass, and vandalism ("Count Three"); and (4) a federal claim for failure to intervene against all defendants for failing to prevent in the theft of her property after their seizure of her home ("Count Four").  (Doc. 22 at 13 ¶ 65, 15–19 ¶¶ 75–77, 79–80, 86, 90; Doc. 36).

The defendants move to dismiss the amended complaint based on lack of standing, improper service, state law peace officer immunity, federal qualified immunity, and for failure to state a claim.  (Docs. 26, 24).  Because Ms. Burt has not shown that she perfected service on ADA Butler, Sergeant Roberts, Sergeant Vick,

Officer Kaylor, Officer Knight, and Officer Gulley, and the court does not find that an extension of time to perfect service is warranted, the court **WILL GRANT** the motions to dismiss and **WILL DISMISS** those defendants from this action **WITHOUT PREJUDICE**.  Because Ms. Burt has not alleged any facts that support a claim against the City, Chief Knight, Lieutenant Reid, Corporal Williamson, or Sergeant Alan Bagwell, the court **WILL GRANT** their motion to dismiss and **WILL DISMISS** those defendants from this action **WITHOUT PREJUDICE**.

That leaves Corporal Stone, whom Ms. Burt names as a defendant in Counts One, Three, and Four.  Because Corporal Stone is entitled to peace officer immunity from Count One, the court **WILL GRANT** the motion to dismiss Count One against Corporal Stone.  However, the court **WILL DENY** the motion to dismiss Counts Three and Four against Corporal Stone because the arguments made in the motion are not sufficient to permit the court to rule on his defenses to those claims.

## I.   BACKGROUND

### 1.   Facts

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  The court may also consider documents a plaintiff attaches to a complaint.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally

consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").
"[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019). But "[w]hen a complaint contains specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit, [the court must] credit the allegations in the complaint." *Id.*; *cf. Saunders v. Duke*, 766 F.3d 1262, 1270–71 (11th Cir. 2014) (explaining that where the plaintiff attaches an exhibit and expressly alleges that its contents are false, "the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss"). "The rule is specific over speculative, concrete over conclusory." *Judd*, 941 F.3d at 514 (instructing courts to "compare each relevant allegation in the complaint with its counterpart in the [exhibit] and decide if [the allegation] is specific enough to prevent that statement in the [exhibit] from being considered").

Ms. Burt's amended complaint contains both specific and conclusory allegations. (*See generally* Doc. 22). She attaches to her amended complaint several police reports. (*See* Docs. 22-3 to 22-8). The court's description of the facts accepts as true Ms. Burt's well-pleaded factual allegations as well as the uncontradicted factual allegations made in the attachments. Where the factual allegations in the reports contradict the complaint's specific factual allegations, the court accepts the

allegation made in the complaint.  The court notes that in addition to the complaint and its attachments, Ms. Burt makes several new allegations in her briefs opposing dismissal.  (*See, e.g.*, Doc. 30 at 14).  The court may not consider those new allegations and therefore omits them from the description of the facts.  *See, e.g.*, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief . . . .").

### i.     *October 14, 2018*

Ms. Burt was involved in a relationship with Charles Spidell which ended acrimoniously.  (Doc. 22 at 6 ¶¶ 21–22).  When Mr. Spidell moved out of Ms. Burt's home on October 14, 2018, he removed electrical fixtures, vandalized the home, and threatened Ms. Burt and her children, forcing them to leave the home.  (*Id.* at 6 ¶¶ 22–23).  Ms. Burt called the police, and Corporal Williamson and Sergeant Bagwell responded to her house.  (*Id.* at 6 ¶ 24).  According to Corporal Williamson's incident/offense report, Ms. Burt told him and Sergeant Bagwell that "she was ok with" Mr. Spidell taking the items that belonged to him from the house, but she was worried he was also going to take items belonging to her, and that he was refusing to sell her the refrigerator, which she needed.  (Doc. 22-3 at 2–4).  Mr. Spidell told Corporal Williamson that he was removing property that belonged to him and that he would "work something out" about the refrigerator.  (*Id.* at 4).

The officers told Ms. Burt and Mr. Spidell that the dispute was a "civil matter" and left.  (Doc. 22-3 at 4).

Several minutes later, Ms. Burt called them back because Mr. Spidell had started removing flooring from the house.  (Doc. 22-3 at 4).  Corporal Williamson repeated that this was a civil matter and, after Mr. Spidell agreed to "hold off on removing any more material from the home," the officers allowed him to leave.  (*Id.*; Doc. 22 at 6–7 ¶¶ 25–26).

Several hours later, Ms. Burt called the police again because Mr. Spidell had returned to the house and started removing electrical fixtures and breakers, which he asserted belonged to him.  (Doc. 22 at 7 ¶ 27; Doc. 22-3 at 4).  This time Sergeant Roberts responded to the house, where he, too, told Ms. Burt that this was a civil property dispute.  (Doc. 22-3 at 4; Doc. 22 at 7 ¶ 28).

Just over an hour later, Ms. Burt called the police for a fourth time that day.  (Doc. 22 at 7 ¶ 29; Doc. 22-3 at 4).  When Sergeant Roberts and Officer Kaylor arrived at her house, she told them that Mr. Spidell had "forcibly" taken and damaged her cell phone, along with the case, which held her driver's license and debit card.  (Doc. 22 at 7 ¶¶ 29–30).  Mr. Spidell denied taking her cell phone.  (Doc. 22-3 at 4).  Sergeant Roberts and Officer Kaylor told Ms. Burt to seek a place of safety elsewhere (doc. 22 at 7 ¶ 30), and she left the house (doc. 22-3 at 4).

### ii.    October 15 and 16, 2018

The next day—October 15—Mr. Spidell went to Ms. Burt's home again. (Doc. 22 at 7 ¶ 31).  Although Ms. Burt called the police, no one went to the property or took any other action.  (*Id.* at 8 ¶¶ 32–33).  On October 16, Ms. Burt came home to find that Mr. Spidell had again burglarized and vandalized her home.  (*Id.* at 8 ¶¶ 33, 37).  After Ms. Burt called the police, unnamed officers went to her house, but did nothing.  (*Id.* at 8 ¶ 35).

### iii.    October 26, 2018

Near the end of October, Ms. Burt obtained from the Jefferson County Family Court a protective order restraining Mr. Spidell from contact with Ms. Burt and her children and from going within 300 feet of her residence, regardless of any ownership or residential interest he held in the property.  (Doc. 22 at 9 ¶ 42; Doc. 22-5 at 2–3).  The order provides that "law enforcement officers may use their arrest powers pursuant to section 15-10-3 to enforce the terms of the injunction."  (Doc. 22-5 at 2).  Alabama Code § 15-10-3 sets out the circumstances under which an officer may make a warrantless arrest.  Ms. Burt had someone give a copy of the protective order to the Pleasant Grove Police Department.  (Doc. 22 at 9 ¶ 44).

### iv.    November 6, 2018

On November 6, 2018, Ms. Burt went out of town and left her goddaughter and uncle to house-sit.  (Doc. 22 at 10 ¶ 45).  Mr. Spidell went to Ms. Burt's house,

and Ms. Burt's goddaughter called the police on him.  (*Id.* at 10 ¶ 46; Doc. 22-6 at

3).  Corporal Stone, Sergeant Roberts, Officer Knight, and Officer Gulley responded

to Ms. Burt's home, where Ms. Burt's uncle gave them a copy of the protective order

(doc. 22 at 10 ¶ 49) and told them that the protective order barred Mr. Spidell from

going within 300 feet of the property (*id.* at 10 ¶¶ 46–47; doc. 22-6 at 3).

The officers spoke with Mr. Spidell, who told them that he resided at the

house, he was there to pick up some tools, and the protective order applied only

when Ms. Burt was home.  (Doc. 22-6 at 3–4).  The officers told Mr. Spidell "to

pack up what he needed and to leave," stated that the protective order applied only

when Ms. Burt was at the house, and required Ms. Burt's relatives to leave the house.

(*Id.*; *see also* Doc. 22 at 10 ¶¶ 50–51).

When Ms. Burt returned that evening, she went to the Police Department to

complain about the events of the day.  (Doc. 22 at 12 ¶ 58).  She met with Officer

Kaylor, who escorted her to her house.  (*Id.*; Doc. 22-7 at 2).  At the house, she

discovered that items were missing, and Officer Kaylor told her that she would have

to give an inventory to her attorney because "some of the items would be considered

a civil matter."  (Doc. 22-7 at 2).  Ms. Burt then noticed that her car was missing

from the driveway and asked Officer Kaylor to list the car as stolen.  (*Id.* at 4).

Officer Kaylor confirmed that she owned the car and then listed the car as stolen in

the National Crime Information Center ("NCIC") database.  (*Id.* at 4; *see* Doc. 22-7 at 4).

> v.     *November 7, 2018*

On November 7, 2018, Ms. Burt went to the police station to complain about the officers' performance from October 14 to 16.  (Doc. 22 at 12 ¶ 61; Doc. 22-4 at 6).  Specifically, she reported that the unnamed officers who had gone to her house on October 16 refused to write a police report because "the disposition of the property was a civil issue."  (*Id.* at 3, 5).  Sergeant Roberts then filed a belated theft report for the items taken on October 16.  (*Id.* at 5).

Also on November 7, Corporal Williamson met with ADA Butler about the situation with Ms. Burt and Mr. Spidell.  (Doc. 22-7 at 4).  ADA Butler believed that, given their history, "the situation was civil in nature" and he refused to issue a warrant for theft of property or receipt of stolen property, additionally instructing Corporal Williamson to remove the car from the NCIC database.  (*Id.*).  Corporal Williamson amended "the charge" to unauthorized use of a vehicle, which provided Ms. Burt the opportunity to request a misdemeanor warrant.  (*Id.*).

### 2.  Procedural History

On September 8, 2020, Ms. Burt filed a complaint in state court.  (Doc. 1-1). The style of the complaint listed seven named defendants, but the first pages of the complaint named twelve defendants—the City, Lieutenant Reid, Corporal

Williamson, Corporal Stone, Sergeant Roberts, Sergeant Vick, Sergeant Bagwell, Officer Kaylor, Officer Knight, "Officer Kyler," "Officer Ryan," and ADA Butler. (*Id.* at 2–5).   Ms. Burt asserted claims for gross negligence; negligent hiring, supervision, and training; two counts of unlawful seizure in violation of the Fourth Amendment; and failure to intervene.  (*Id.* at 10–20).

In December 2020, ADA Butler moved to dismiss the complaint on various grounds, including lack of personal jurisdiction based on insufficient service.  (Doc. 1-3 at 2–3).  One day later, the City removed the case to federal court.  (Doc. 1).  The City and the five defendants listed in the style of the initial complaint then moved to dismiss the complaint.  (Doc. 4).  While the two motions to dismiss were pending, Ms. Burt moved to remand the case to state court.  (Doc. 13).  This court denied the motion to remand (doc. 20) and, concluding that Ms. Burt's complaint was a shotgun pleading, struck the complaint and ordered Ms. Burt to replead (doc. 21).

Ms. Burt filed her amended complaint on March 11, 2021, re-naming the City and eight of the defendants named in the initial complaint, dropping "Officer Ryan" and "Officer Kyler," and adding Chief Knight, Officer Knight, and Officer Gulley. (Doc. 22).  Given the filing of the amended complaint, the court denied as moot the motions to dismiss the initial complaint.  (Doc. 23).  All of the defendants then moved to dismiss the amended complaint.  (Docs. 24, 26).

## II.   DISCUSSION

The court will address ADA Butler's motion to dismiss first, followed by the City and the Officers' motion to dismiss.

### 1.  ADA Butler's Motion to Dismiss

ADA Butler moves to dismiss the complaint based on lack of standing, insufficient service of process, various state and federal immunities, and for failure to state a claim.  (Doc. 24).  Because the court concludes that Ms. Burt failed to properly serve ADA Butler, depriving this court of personal jurisdiction over him, the court addresses only that ground for dismissal.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory sequencing of jurisdictional issues.  In appropriate circumstances, . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.") (citation and quotation marks omitted).

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).  But a defendant can waive his objection to insufficient service of process by failing to challenge service under Federal Rule of Civil Procedure 12.  *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008).  Federal Rule of Civil Procedure 12(b)(5) permits a party to move to dismiss a complaint for

insufficient service of process as long as the party objecting to service does so in his first responsive pleading.  Fed. R. Civ. P. 12(b)(5); *Hemispherx Biopharma, Inc.*, 553 F.3d at 1360.

Ms. Burt contends that ADA Butler has waived any objection to the sufficiency of service because, "while defendant Butler makes some arguments and defenses in [his] motion to dismiss, he failed to 'object' to personal jurisdiction while participating in these proceedings."  (Doc. 29 at 19).  It is not entirely clear why Ms. Burt believes ADA Butler has waived his objection to the sufficiency of service. ADA Butler's motion to dismiss makes a clear argument that dismissal is appropriate because service on him was insufficient.  (Doc. 24 at 1 ¶ 2; Doc. 25 at 13–14).  He made the same argument in his first motion to dismiss, which he filed in state court before the City removed the action to federal court.  (Doc. 1-3 at 3 ¶ 7; Doc. 1-4 at 6–7).

To the extent Ms. Burt is arguing that ADA Butler cannot preserve a challenge to the sufficiency of service only by using the word "object," that argument is frivolous.  To the extent Ms. Burt is arguing that ADA Butler waived his objection to service because he made arguments unrelated to service, the text of Rule 12 forecloses that argument by providing: "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."  Fed. R. Civ. P. 12(b).  Because ADA Butler has not waived his objection

to service of process or personal jurisdiction, the court must address whether service was proper.

State law governs whether pre-removal service was proper. *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985). Alabama Rule of Civil Procedure 4 permits service on an individual by (1) "serving the individual"; (2) "leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein"; or (3) "delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process." Ala. R. Civ. P. 4(c)(1). "Service by certified mail shall be deemed complete" after "delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt." Ala. R. Civ. P. 4(i)(2)(C).

Here, the certified mail return receipt does not reflect delivery to ADA Butler or anyone else. (Doc. 24-1 at 1). It has no signature, no indication that anyone accepted the mail, and no date of delivery. (*Id.*). Ms. Burt contends that service was proper because U.S. Postal Service online tracking shows that on November 7, 2020, an "item" was "delivered to an individual" somewhere in Bessemer, Alabama, without giving a specific street address. (Doc. 29 at 21; *see* Doc. 29-1 at 2). The printout of the tracking form she provides does not identify what the "item" was. (*See* Doc. 29-1 at 2). But even assuming the "item" was the summons and complaint

and that the location in Bessemer was ADA Butler's residence, the tracking information does not show that ADA Butler or a "person of suitable age and discretion then residing" at his residence accepted the package. *See* Ala. R. Civ. P. 4(i)(2)(C). Ms. Burt's pre-removal service on ADA Butler was insufficient to satisfy the requirements of Alabama law.

When a case is removed from state court before service has been perfected or after defective service, "such process or service may be completed or new process issued in the same manner as in cases originally filed in [the federal] district court." 28 U.S.C. § 1448. Federal Rule of Civil Procedure 4(e) provides that a party may perfect service in four ways: (1) by following state law for service; (2) by "delivering a copy of the summons and of the complaint to the individual personally"; (3) by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1)–(2). Service performed after removal must be completed within ninety days after the removal. Fed. R. Civ. P. 4(m); 4B Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1137 (4th ed. 2015).

Although far more than ninety days have passed since the removal in December 2020 (*see* doc. 1), the record reflects no attempt to correct service on ADA Butler post-removal, despite ADA Butler's pre-removal motion to dismiss on the

ground that service of process was insufficient (docs. 1-3, 1-4).  Ms. Burt contends that because she filed an amended complaint on March 11, 2021, she had 120 days—until July 11, 2021—to complete service on ADA Butler.  (Doc. 29 at 21).  Even assuming that Ms. Burt had until July 11, 2021, to perfect service, she did not do so.

But in any event, Ms. Burt did not have until July 11, 2021, to perfect service. Federal Rule 4(m), which became applicable once the case was removed to federal court, gives only ninety days to complete service.  Fed. R. Civ. P. 4(m); 4B Wright & Miller, *Fed. Practice & Proc.* § 1137.  And "[f]iling an amended complaint does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service," except as to parties added for the first time in the amended complaint.  4B Wright & Miller, *Fed. Practice & Proc.* § 1137; *see also Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) (holding that the time limit for service "provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint").  Ms. Burt named ADA Butler in her initial complaint (*see* doc. 1-1 at 2), so her amended complaint could not restart the time to complete service on him.

Ms. Burt also contends that service was proper because Northern District of Alabama Local Rule 5.5 permits electronic filing of documents and Local Rule 5.6 permits electronic service of documents.  (Doc. 29 at 20–21).  The Local Rules, however, merely implement the court's General Order No. 2004-01.  The General

Order provides that "*[e]xcept for original process* . . . . [i]f the recipient of [electronic] notice or service is a registered participant in the [Case Management/Electronic Case Files ("CM/ECF")] System, service by electronic means . . . shall be the equivalent of service of the pleadings or other documents by hand delivery."  General Order at 2 ¶¶ 9(A), (C) (emphasis added).  The General Order further provides that participation in the CM/ECF Electronic Noticing System constitutes agreement "to receive service of all orders, pleadings, and documents, *with the exception of original process*, by electronic means."  *Id.* at 2 ¶ 10 (emphasis added).  Neither the General Order nor the Local Rules permit a party to perfect service of original process by any means other than those set out in Federal Rule of Civil Procedure 4(e).  And Rule 4(e) does not permit electronic service of original process.  *See* Fed. R. Civ. P. 4(e).  Accordingly, Ms. Burt did not serve ADA Butler within the prescribed time limit.

Rule 4(m) gives the court discretion to extend the time for service, even without the plaintiff showing good cause for an extension.  *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005).  Factors that could justify an extension of time include whether "the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."  *Id.* at 1132–33 (quoting Fed. R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments).  Although Ms. Burt has never asked for an

extension of time, the court has considered those factors.  *See Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007) ("[T]he running of the statute of limitations, which barred the plaintiffs from refiling their claims, does not require that the district court extend time for service of process under Rule 4(m), [but] it [is] incumbent upon the district court to at least consider this factor."). Ms. Burt filed her initial complaint over a year ago, in September 2020, and ADA Butler first pointed out the flaw in service over nine months ago, in December 2020. Ms. Burt has never taken any steps to correct the improper service, nor has she requested an extension of time to perfect service.  Given the age of this case and the lack of any request or attempt to remedy the issues with service, the court declines to exercise its discretion to permit an extension of time for service.

The court therefore **WILL GRANT** ADA Butler's motion to dismiss and **WILL DISMISS** ADA Butler from this action **WITHOUT PREJUDICE** for insufficient service.

2.  <u>The City and the Officers' Motion to Dismiss</u>

The City and the Officers also move to dismiss the amended complaint.  (Doc. 26).  They assert that dismissal is appropriate because: (1) Ms. Burt failed to perfect service on Sergeant Roberts, Sergeant Vick, and Officers Kaylor, Knight, and Gulley; (2) Ms. Burt lacks standing to challenge their failure to investigate or arrest Mr. Spidell; (3) they are entitled to peace officer immunity from the state law claim

and to qualified immunity from the federal claims; and (4) Ms. Burt fails to state a claim.  (*Id.*).

### i.      Sufficiency of Service

Sergeant Roberts, Sergeant Vick, and Officers Kaylor, Knight, and Gulley assert that the court lacks personal jurisdiction over them because they have not been served.  (Doc. 26 at 1 n.1).  Ms. Burt does not argue that she properly served these defendants, but instead that they waived their objection to the sufficiency of service because they failed to "object" on that ground.  (Doc. 30 at 2 n.1, 15–16).

Ms. Burt's initial complaint, which was filed in September 2020, clearly named Sergeant Roberts, Sergeant Vick, and Officer Kaylor as defendants.  (Doc. 1-1 at 2–3).  But the record contains no indication that Ms. Burt ever even attempted to serve those three defendants.  Accordingly, service on them was insufficient. Moreover, although Ms. Burt has not requested any extra time to perfect service, the court has considered whether it should *sua sponte* extend the time for service and exercises its discretion not to do so.  *See* Fed. R. Civ. P. 4(m); *Horenkamp*, 402 F.3d at 1132–33.

Officers Knight and Gulley are slightly more complicated.  The amended complaint clearly did not name Officer Gulley as a defendant, despite mentioning him by name while describing the facts underlying Ms. Burt's complaint.  (*See* Doc. 1-1 at 2–3, 9 ¶¶ 29, 31).  Similarly, the initial complaint did not identify "Ryan

Knight" as a defendant, although it did identify an "Officer Ryan," who may be the same Officer Knight named in the amended complaint. (*Compare* Doc. 1-1 at 2 *with* Doc. 22 at 4). Ms. Burt did name both Officer Gulley and Officer Knight as defendants in the amended complaint. (Doc. 22 at 4 ¶¶ 11–12). For ease of analysis, the court will consider both Officer Gulley and Officer Knight to be defendants named for the first time in the amended complaint, which Ms. Burt filed on March 11, 2021. (Doc. 22).

Because Officers Knight and Gulley were named for the first time on March 11, 2021, Ms. Burt had ninety days—until June 9, 2021—to serve them. *See* Fed. R. Civ. P. 4(m). However, the record does not reflect any attempt to do so. Indeed, the record does not even reflect a request for summonses from the Clerk of the Court. Service cannot be completed without a summons. *See* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."). Accordingly, service on Officers Knight and Gulley was also insufficient.

The court has again considered whether an extension of time to perfect service on these defendants is appropriate under all of the circumstances presented by this case. *See* Fed. R. Civ. P. 4(m); *Horenkamp*, 402 F.3d at 1132. The court concludes that it is not. Although Ms. Burt was on notice that the defendants were challenging the sufficiency of service, she has taken no action to even begin service of process, nor has she requested an extension of time to complete service. The court has

considered the effect of a dismissal given the applicable statute of limitations and whether the statute of limitations converts this dismissal without prejudice to one with prejudice, but nevertheless exercises its discretion not to *sua sponte* extend the time for service.  *See Lepone-Dempsey*, 476 F.3d at 1282.

Accordingly, the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** Sergeant Roberts, Sergeant Vick, and Officers Kaylor, Knight, and Gulley for insufficient service.

          *ii.*    *Standing*

The remaining defendants are the City, Chief Knight, Lieutenant Reid, Corporal Williamson, Corporal Stone, and Sergeant Bagwell.  In their motion to dismiss, they state in passing that Ms. Burt lacks standing to bring this lawsuit.  (Doc. 26 at 6).

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over "cases" or "controversies."  U.S. Const. art. III, § 2; *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The plaintiff bears the burden of establishing standing by showing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "An injury in fact consists of 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Trichell*, 964 F.3d at 996 (quoting *Lujan*, 504 U.S. at 560). "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993). A plaintiff must have standing for each claim she asserts. *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

Analysis of Ms. Burt's standing to assert her claims depends on the claims she has actually asserted. In Count One, Ms. Burt charges the City and the Officers with gross negligence for permitting Mr. Spidell to burglarize and vandalize her home and steal her car despite their knowledge of the protective order barring him from her residence. (Doc. 13 at 14 ¶ 72). In Counts Two through Four, she charges the City and the Officers with liability for several officers unlawfully seizing her house, resulting in Mr. Spidell's commission of the burglary and vandalism of her home and theft of her car. (*Id.* at 15 ¶ 75, 17–18 ¶¶ 79–87, 19–20 ¶ 90–91; *see also* Doc. 36).

The City and the remaining Officers contend that all of Ms. Burt's claims are limited to their failure to arrest or pursue criminal charges against Mr. Spidell. (*See* Doc. 26 at 8). The court is unpersuaded by their reading of Ms. Burt's amended

complaint.  Although Ms. Burt repeatedly references the failure to arrest Mr. Spidell, the failure to arrest him is not the sole basis for her claims; it is just one link in the chain of events she challenges, which culminated in the alleged seizure of her home for the purpose of allowing Mr. Spidell to enter and remove property from it.  That chain includes her acquisition of a protective order, her submission of the protective order to various police officers, and the officers' decision to disregard the protective order and allow Mr. Spidell access to her property.  It is true that Ms. Burt alleges that, had the officers arrested Mr. Spidell, the harms of which she complains would not have occurred.  But that fact does not convert her negligence, unlawful seizure, and failure to intervene claims into "failure to arrest" claims.

With that understanding of Ms. Burt's claims, the court turns to the question of standing.  The City and the Officers offer little argument in support of their challenge to standing.  They appear to assert that Ms. Burt has no legally protected interest in their failure to arrest Mr. Spidell and that she cannot trace her injury to their conduct.  (Doc. 26 at 6, 8–10).  They rely primarily on the Supreme Court's decision in *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973).

In *Linda R.S.*, the plaintiff sought an injunction against the discriminatory enforcement of a state statute criminalizing non-support of children.  410 U.S. at 615–16.  The Supreme Court held that the plaintiff—the mother of an illegitimate child whose father refused to pay support—lacked standing because she had not

alleged "a sufficient nexus between her injury and the government action which she attack[ed]." *Id.* at 617–18. Although she had suffered an injury, she could not show traceability because she had "made no showing that her failure to secure support payments results from the nonenforcement" of the state statute. *Id.* at 618. And if she obtained the relief she sought (an injunction requiring enforcement of the statute), "it would result only in the jailing of the child's father," not necessarily his payment of support. *Linda R.S.*, 410 U.S. at 618; *see Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978) (noting that the *Linda R.S.* plaintiff lacked standing "because of the unlikelihood that the relief requested would redress [her] claimed injury"). The Court concluded that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619.

Here, the City and the Officers do not (and cannot) challenge the redressability prong of the standing analysis. It is clear that, unlike in *Linda R.S.*, the relief Ms. Burt seeks (monetary damages) could redress her claimed injury (the theft of and damage to her property). That leaves the questions: (1) whether Ms. Burt has alleged an invasion of a legally protected interest and (2) whether she can trace her injury to the defendants' conduct.

The interest that Ms. Burt alleges was invaded is her interest in her home and possessions. There can be no dispute about whether that interest is legally protected for purposes of a standing analysis. Even assuming that *Linda R.S.*'s statement about

an individual's "judicially cognizable interest" meant "legally protected interest" (as opposed to standing in general), this case is distinguishable from *Linda R.S.*  In that case, the plaintiff was seeking only injunctive relief, in the form of enforcement of a state criminal statute against someone else.  410 U.S. at 615–16.  By contrast, Ms. Burt seeks damages from the City and the Officers because (she alleges) their actions allowed Mr. Spidell to invade her home and take her possessions.  The court concludes that Ms. Burt has alleged the invasion of a legally protected interest sufficient to establish an injury in fact.

The only other argument against standing is that Ms. Burt cannot trace her injury to the defendants' conduct.  In conducting an analysis of the traceability element of standing, the court is "concerned with something less than the concept of 'proximate cause.'"  *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (quoting *Loggerhead Turtle v. Cnty. Council*, 148 F.3d 1231, 1251 n.23 (11th Cir. 1998)).  However, "[t]he causal link may become 'too attenuated' if the injury is 'the result of the independent action of some third party not before the court.'"  *Loggerhead Turtle*, 148 F.3d at 1247 (quoting *Lujan*, 504 U.S. at 560).  But "standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties."  *Id.*  "Instead, even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes."  *Focus on the Fam.*, 344 F.3d at 1273.

Although Ms. Burt alleges that Mr. Spidell was the person who committed the burglary and vandalism of her home and the theft of her car, she also alleges specific actions taken by various defendants that allowed Mr. Spidell to commit those crimes, such as informing Ms. Burt's relatives that the protective order was not effective and permitting Mr. Spidell to enter the house and take the items he sought. The court finds that these allegations are sufficient to establish traceability for standing purposes.

In summary, the court concludes that Ms. Burt has alleged facts that, if true, would give her standing to assert all of her claims, so the court will not dismiss her amended complaint based on a lack of subject matter jurisdiction.

### iii.    Federal Claims

Ms. Burt asserts three federal claims. (*See* Doc. 36). In Count Two, Ms. Burt alleges that the City, Chief Knight, Lieutenant Reid, and Corporal Williamson negligently hired, supervised, and trained Corporal Stone, Sergeant Bagwell, Officer Kaylor, and Officer Gulley.[1] (Doc. 22 at 15–16). In Count Three, Ms. Burt alleges that the remaining defendants—the City, Chief Knight, Lieutenant Reid, Corporal Williamson, Corporal Stone, and Sergeant Bagwell—unlawfully seized her house and personal property by taking control of her house, requiring her guests to leave,

---

[1] The court lacks personal jurisdiction over Officer Kaylor and Officer Gulley due to Ms. Burt's failure to serve them, but if they were negligent, the supervisory defendants could still be held liable for their negligence.

and permitting Mr. Spidell to burglarize and vandalize the home and steal her car. (*Id.* at 17–19). And in Count Four, Ms. Burt alleges that the remaining defendants failed to intervene to stop Mr. Spidell's theft and vandalism. (*Id.* at 19–20). The defendants contend both that Ms. Burt fails to state a claim and that they are entitled to qualified immunity from these claims. (Doc. 26 at 5–11, 18–20).

The court must dismiss a case if the plaintiff fails to plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and alteration omitted).

### a. The City

Ms. Burt brings all three of her federal claims against the City under 42 U.S.C. § 1983. She does not allege any facts specific to the City (*see* doc. 22 at 6–13), instead seeking to hold the City liable in a supervisory capacity (*id.* at 15–20; *see also* doc. 30 at 34–36).

A municipality cannot be liable under § 1983 based on a theory of vicarious liability; instead, the plaintiff must establish that the City had a policy, custom, or

practice that caused the alleged constitutional violation.  *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).  A plaintiff can do so in several ways, such as pointing out an official policy enacted by a legislative body, a longstanding practice that final policymakers have acquiesced in, or a final policymaker's ratification of an unconstitutional decision.  *Id.*  Ms. Burt's amended complaint does not allege any facts indicating the existence of any official or unofficial policy, custom, or practice.   At best, she alleges that certain officers violated her constitutional rights on November 6, 2018, but "[a] single incident would not be so pervasive as to be a custom or practice."  *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1303 (11th Cir. 2003) (en banc); *see also Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.").  Accordingly, the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** the federal claims against the City for failure to state a claim.

### b.  Chief Knight and Lieutenant Reid

Ms. Burt also does not state a claim against Chief Knight or Lieutenant Reid. Again, Ms. Burt brings each of her claims under § 1983.  A defendant cannot be held liable under § 1983 based on respondeat superior or vicarious liability.  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994).  But "supervisors are liable under § 1983 either when the supervisor personally participates in the alleged

constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks omitted).  Here, as with the City, Ms. Burt alleges no facts specific to Chief Knight or Lieutenant Reid.  (*See* Doc. 22 at 6–13).  She has therefore not stated a claim against them.  The court **WILL GRANT** the motion to dismiss and **WILL DISMISS** the federal claims against Chief Knight and Lieutenant Reid for failure to state a claim.

### c.  Corporal Williamson and Sergeant Bagwell

The only factual allegations Ms. Burt makes that are specific to Corporal Williamson and Sergeant Bagwell are that on October 14, 2018, those two officers went to her house twice in response to phone calls she made to the police.  (Doc. 22 at 6–7 ¶¶ 26; Doc. 22-3 at 2–4).  When they went to her house the first time, Ms. Burt told them that "she was ok with" Mr. Spidell taking items that belonged to him, but she was worried that he was going to take some of her belongings, and Mr. Spidell told the officers that he was taking only his own property.  (Doc. 22-3 at 2–4).  When they went back several minutes later in response to Ms. Burt's second call about Mr. Spidell removing flooring from the house, Mr. Spidell agreed to stop removing the flooring and left.  (Doc. 22 at 6–7 ¶¶ 25–26; Doc. 22-3 at 4).  Corporal Williamson and Sergeant Bagwell were not among the officers who went to Ms. Burt's house on the other occasions.  (*See* Doc. 22 at 7–13).

In Count Two, Ms. Burt asserts that Corporal Williamson is liable for failing to properly hire, supervise, and train Sergeant Bagwell.  (Doc. 22 at 15 ¶ 75).  Although the claim is not clearly pleaded, Ms. Burt has clarified that this is a federal claim (doc. 36), so the court construes the claim to be one for supervisory liability against Corporal Williamson based on Sergeant Bagwell's actions.

As the court has described above, Ms. Burt's allegations about Corporal Williamson and Sergeant Bagwell are limited to the two visits they made to her house on October 14, 2018.  Ms. Burt has not presented any argument, nor is it clear from her amended complaint, how Corporal Williamson's and Sergeant Bagwell's actions on October 14, 2018, violated her constitutional rights.  To the extent she argues that they permitted Mr. Spidell to vandalize her home by removing flooring, she also alleges that he stopped removing flooring and left the house at their request. (Doc. 22 at 7 ¶ 26; Doc. 22-4 at 4).  Corporal Williamson and Sergeant Bagwell were not present at Ms. Burt's house on October 15, October 16, or November 6, 2018, nor does Ms. Burt allege any facts indicating that they were even aware of the incidents on those dates.  (*See* Doc. 22 at 8 ¶¶ 32–35, 10 ¶ 47).  Accordingly, Ms. Burt has not alleged facts stating a plausible claim that Corporal Williamson personally participated in a constitutional violation or caused a constitutional violation such that he could be held responsible as Sergeant Bagwell's supervisor. *See Keating*, 598 F.3d at 762.

Ms. Burt also asserts Counts Three and Four against Corporal Williamson and Sergeant Bagwell. (Doc. 22 at 17 ¶ 79, 19 ¶ 90). Count Three, for unlawful seizure, and Count Four, for failure to intervene in the unlawful seizure, appear to arise from the November 6, 2018 incident. (*See* Doc. 22 at 17–20). Again, Ms. Burt does not allege any facts indicating that Corporal Williamson or Sergeant Bagwell was present at her house on November 6 or that they were aware of or in a position to do anything about the November 6 incident. Accordingly, she has not stated a plausible claim that Corporal Williamson or Sergeant Bagwell unlawfully seized her home or failed to intervene in the seizure of her home.

The court therefore **WILL GRANT** the motion to dismiss and **WILL DISMISS** Counts Two, Three, and Four against Corporal Williamson and Sergeant Bagwell for failure to state a claim.

### d. Corporal Stone

In Count Two, Ms. Burt alleges that various supervisory officers are liable for failing to properly hire, supervise, and train Corporal Stone, among others. (Doc. 22 at 15 ¶ 75). She does not, however, assert any kind of supervisory liability claim against Corporal Stone himself. (*Id.*). Because Ms. Burt does not assert that claim against Corporal Stone, there is nothing for the court to dismiss with respect to Count Two.

But Ms. Burt does name Corporal Stone as a defendant in Counts Three and Four.  (Doc. 22 at 17 ¶¶ 79–80, 19 ¶ 90).  In those counts, she seeks to hold Corporal Stone liable for unlawfully seizing her home, in violation of the Fourth Amendment, and for failing to intervene in the other officers' unlawful seizure of her home.  (*Id.* at 17–20).  Corporal Stone seeks the dismissal of these claims for failure to state a claim and based on qualified immunity.  (Doc. 26 at 8–9, 20).

As an initial matter, Corporal Stone argues that Ms. Burt does not state a Fourteenth Amendment due process claim.  (Doc. 26 at 9–1).  But Ms. Burt does not assert a Fourteenth Amendment due process claim.  Count Four is entirely derivative of Count Three (*see* doc. 22 at 19–20 ¶¶ 90–91), and Count Three clearly asserts only a Fourth Amendment unlawful seizure claim (*id.* at 17–19).  That count is titled "Unlawful Search and Seizure in Violation of Fourth Amendment of the United States Constitution as Protected Under 42 U.S.C. § 1983," and alleges that the named defendants "deprived the Plaintiff of her rights to be free from unlawful seizure of her real and personal property without probable cause or a lawfully issued warrant to seize such property."  (*Id.* at 17–18 & ¶ 84).  The count—indeed, the amended complaint—makes no reference to "due process."  The only reasonable interpretation of Count Three's citation to "the Fourth and Fourteenth Amendments" (*id.* at 18–19 ¶ 88) is in reference to the Fourteenth Amendment's incorporation of the Fourth Amendment's provisions and application of those provisions to the States.

*See United States v. Timmann*, 741 F.3d 1170, 1177–78 (11th Cir. 2013) ("The Fourth Amendment's prohibition against unreasonable searches and seizures is enforceable against the states through the Fourteenth Amendment."). The court cannot dismiss a claim that Ms. Burt did not raise, so the court need not analyze whether Ms. Burt could state a due process claim.

Corporal Stone's entire argument with respect to Ms. Burt's unlawful seizure claim is that she fails to state a claim because "[t]he protections of the Fourth Amendment . . . apply to government actors, not the actions of private individuals, *i.e.*, Charles Spidell" and the Fourth Amendment does not permit a person to compel the arrest or prosecution of a third party. (Doc. 26 at 8–9). He further argues that he is entitled to qualified immunity because no law clearly establishes an officer's obligation to arrest someone for violating a protective order. (*Id.* at 20).

These arguments are insufficient for the court to evaluate whether dismissal of Counts Three and Four is appropriate. The motion to dismiss presents three sentences setting out a general statement of law on unlawful seizure, but does not address Ms. Burt's factual allegation that he assisted Mr. Spidell's entry into the house and theft of various items. Specifically, Corporal Stone does not address the legal effect of the allegations that he was present at the house, aware of the protective order, yet still ordered Ms. Burt's uncle and goddaughter to leave the house while and permitting Mr. Spidell to "pack up what he needed and to leave." (*See* Doc. 22-

6 at 3–4); *see Soldal v. Cook Cnty.*, 506 U.S. 56, 57–59, 69 (1992) (holding that a seizure, as contemplated by the Fourth Amendment, occurred when police officers accompanied workers to haul away the plaintiffs' trailer home despite the lack of an eviction order). Nor does Corporal Stone address whether, if those actions did amount to a seizure, the seizure was unreasonable, and therefore in violation of the Fourth Amendment.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . . Rather, the onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted). This is true even when a defendant asserts that he is entitled to qualified immunity. *See Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014) (holding that the district court was not required to address a "single, passing reference" to a ground for qualified immunity where that reference was "unaccompanied by any discussion or elaboration"). Corporal Stone's argument is brief and perfunctory, and impermissibly places the burden on the court to research and determine, on its own, whether Ms. Burt states a claim. The court will not engage in that exercise.

In a similarly brief and perfunctory manner, Corporal Stone asserts that he is entitled to qualified immunity because no law clearly establishes an officer's obligation to arrest someone for violating a protective order. (Doc. 26 at 20). In

support, he cites to two extracircuit cases about whether a plaintiff can assert a due process claim based on a police officer's failure to arrest someone for violating a protective order. (*Id.*). This argument misapprehends Ms. Burt's claim, which is for unlawful seizure of her home and personal property, not violation of her due process rights for failing to arrest Mr. Spidell. The argument is, again, too perfunctory for the court to rule on qualified immunity without formulating Corporal Stone's arguments for him. Accordingly, the court **WILL DENY** the motion to dismiss Counts Three and Four against Corporal Stone.

### iv.    State Law Claim

In Count One, Ms. Burt asserts that the defendants were grossly negligent because their failure to enforce the protective order allowed Mr. Spidell to burglarize and vandalize her home and steal her car on November 6, 2018. (Doc. 22 at 13 ¶ 65, 14 ¶ 72). The remaining defendants seek the dismissal of this claim for failure to state a claim and based on peace officer immunity (Doc. 26 at 11–18).

As an initial matter, Ms. Burt does not allege any facts at all about Chief Knight or Lieutenant Reid. (*See generally* Doc. 22). And Ms. Burt's allegations about Corporal Williamson and Sergeant Bagwell are limited to what occurred on October 14—three weeks before the November 6 incident that forms the basis for Count One. (Doc. 22 at 6 ¶ 24; Doc. 22-3 at 2–4). Accordingly, she fails to state a claim with respect to Chief Knight, Lieutenant Reid, Corporal Williamson, and

Sergeant Bagwell, and the court **WILL DISMISS** Count One against those defendants.

Ms. Burt does allege some facts about Corporal Stone's actions on November 6. (Doc. 22 at 10 ¶¶ 46–51, 13 ¶ 65; Doc. 22-5 at 3–4; Doc. 22-6 at 3). As a result, the court must analyze whether Corporal Stone is entitled to immunity from suit based on those actions. Alabama law provides that "[e]every peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). "Discretionary functions are those as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice involving what is just and proper under the circumstances." *City of Birmingham v. Sutherland*, 834 So. 2d 755, 759 (Ala. 2002) (quotation marks omitted). Ms. Burt does not dispute that Corporal Stone was performing a discretionary function when he responded to her house on November 6, entitling him to immunity unless an exception to peace officer immunity applies. *See, e.g.*, *Downing v. City of Dothan*, 59 So. 3d 16, 20 (Ala. 2010) (describing the burden shifting framework for analyzing a state law immunity defense).

Immunity does not protect an officer when the officer "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a

mistaken interpretation of the law." *Ex Parte City of Montgomery*, 272 So. 3d 155, 160–61 (Ala. 2018).  Ms. Burt appears to argue that Corporal Stone acted beyond his authority or under a mistaken interpretation of the law because he had a statutory duty to investigate and pursue an arrest warrant based on various crimes Mr. Spidell committed.   (Doc. 30 at 31).   But the decision whether to arrest someone is discretionary one, and Alabama law does not require an officer to make a warrantless arrest, even where the crime was committed in the officer's presence.  *Sutherland*, 834 So. 2d at 759; Ala. Code § 15-10-3(a).  Ms. Burt makes no other argument in support of an exception to immunity.  She therefore has not carried her burden of establishing that an exception to peace officer immunity applies, and Corporal Stone is entitled to immunity from the gross negligence claim.

Because Corporal Stone is entitled to peace officer immunity, so is the City.  *See* Ala. Code § 3-5-338(b); *see Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune.").  Accordingly, the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** the gross negligence claim against Corporal Stone and the City based on peace officer immunity.

## III.   CONCLUSION

The court **WILL GRANT** ADA Butler's motion to dismiss the amended complaint **WITHOUT PREJUDICE** for insufficient service of process.

The court **WILL GRANT IN PART AND WILL DENY IN PART** the City and the Officers' motion to dismiss the amended complaint.  The court **WILL GRANT** the motion and **WILL DISMISS** Sergeant Roberts, Sergeant Vick, Officer Kaylor, Officer Knight, and Officer Gulley **WITHOUT PREJUDICE** for insufficient service of process.  The court **WILL GRANT** the motion and **WILL DISMISS** the City, Chief Knight, Lieutenant Reid, Corporal Williamson, and Sergeant Alan Bagwell **WITHOUT PREJUDICE** for failure to state a claim against them.  And the court **WILL GRANT** the motion to dismiss Count One against Corporal Stone **WITHOUT PREJUDICE** based on his peace officer immunity.

But the court **WILL DENY** the motion to dismiss Counts Three and Four against Corporal Stone.  Those claims will proceed.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 14, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

37