# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SHANNON DANIEL-BURT,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **2:20-cv-01973-ACA** |
| ] | |
| **CITY OF PLEASANT GROVE,** ] | |
| **ALABAMA, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

After breaking up with Charles Spidell, Plaintiff Shannon Daniel-Burt obtained a "protection from abuse" order requiring him to stay more than 300 feet away from her home at all times. Fearing Mr. Spidell would not comply with the order, Ms. Daniel-Burt asked her uncle, Steve Roberts, and goddaughter, Ariel Nally, to watch her house while she was out of town. As Ms. Daniel-Burt predicted, Mr. Spidell took her absence as an opportunity to go to the house. Ms. Nally called the police. One of the officers who responded is Defendant Matthew Stone, a corporal in the Pleasant Grove Police Department. Unsure who had a right to be at the house, the officers made everyone leave. But first they let Mr. Spidell take some boxes from a shed. After everyone—including the officers—had left, Mr. Spidell returned and ransacked the house.

Ms. Daniel-Burt filed this lawsuit against a number of defendants, asserting a number of claims. (Doc. 22). This court has dismissed all the defendants except Corporal Stone, and all the claims except two: (1) Count Three, asserting unlawful seizure, in violation of the Fourth Amendment, and (2) Count Four, asserting failure to intervene in Mr. Spidell's theft. (Doc. 22 at 17 ¶¶ 79–80, 18 ¶ 86, 19–20 ¶ 90). Previously counseled, Ms. Daniel-Burt is now proceeding unrepresented. (Doc. 54).

Corporal Stone moves for summary judgment on both claims remaining against him. (Doc. 64). Because Ms. Daniel-Burt has not shown that Corporal Stone violated a clearly established constitutional right by failing to stop Mr. Spidell's theft and vandalism of the house, the court **WILL GRANT** the motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in Corporal Stone's favor and against Ms. Daniel-Burt.

## I.   BACKGROUND

In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to Ms. Daniel-Burt. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the

true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

For part of 2018, Ms. Daniel-Burt lived with her children, her boyfriend Charles Spidell, and her goddaughter Sky Nally. (Doc. 65-1 at 9, 14–15). In October of that year, Ms. Daniel-Burt and Mr. Spidell broke up and Mr. Spidell moved out of the house. (*Id.* at 10–12). On the day he began moving out, he threatened Ms. Daniel-Burt and her children and damaged the house, prompting her to repeatedly call the police for help. (*Id.* at 11–12). Over the next few weeks, Mr. Spidell repeatedly drove by Ms. Daniel-Burt's house and his cousins broke into the house. (Doc. 65-1 at 13–14).

In late October, Ms. Daniel-Burt obtained an *ex parte* protection order restraining Mr. Spidell from going within 300 feet of Ms. Daniel-Burt's residence and from "transferring, concealing, encumbering, or otherwise disposing of specified property mutually owned or leased by the parties, as follows: ____." (*Id.* at 81). The order left the line for specifying property blank. (*See id.*).

In late October, Ms. Daniel-Burt left town on a trip. (Doc. 65-1 at 14–15). Worried about Mr. Spidell coming to the house in her absence, she asked her uncle, Steve Roberts, and Ms. Nally to watch the house. (*Id.*). She left them with a copy of the protection order and told them to call the police if Mr. Spidell came on the property. (*Id.*).

On November 6, 2018, Mr. Spidell went to Ms. Daniel-Burt's house. (Doc. 65-1 at 15, 17–18). When Ms. Nally saw Mr. Spidell loading a pickup truck with items from the shed, she called the police. (Doc. 69 at 9). Several police officers, including Corporal Stone, responded to the call. (Doc. 65-2 at 2–3). Ms. Nally informed the officers that Mr. Spidell had lived in Ms. Daniel-Burt's house while dating her; she also gave them the protection order. (*Id.* at 3; doc. 65-1 at 63; doc. 69 at 9). Mr. Spidell told the officers that Ms. Nally and Mr. Roberts did not live at the house and "could not keep him from there." (Doc. 65-2 at 3). When the officers asked for evidence that Mr. Roberts and Ms. Nally had Ms. Daniel-Burt's permission to be at the house, they could not offer any. (*Id.* at 3; doc. 69 at 9; *see also* doc. 65-1 at 16). Ms. Nally told the officers that Ms. Daniel-Burt was not available because she was on a flight. (Doc. 65-2 at 3; doc. 65-1 at 63).

One of the officers—Ms. Nally does not identify him by name—asked Mr. Spidell if he knew about the protection order. (Doc. 69 at 9). Mr. Spidell acknowledged that he knew about the order but said that it was valid only when Ms. Daniel-Burt was there. (*Id.*). Mr. Spidell told the officers he was at the house to retrieve some tools that belonged to him. (Doc. 65-2 at 3). The officers told Mr. Spidell "to get what he needed from the property and leave" and allowed him to take several boxes from the shed and garage. (Doc. 69 at 6). At no point did anyone

4

say that Mr. Spidell did not own whatever was in the boxes. (Doc. 65-2 at 3; *see also* Doc. 65-1 at 18; doc. 69 at 5–6).

The officer to whom Ms. Nally had given the order returned it to Ms. Nally unread, telling her that it was valid only when Ms. Daniel-Burt was at home. (Doc. 69 at 5, 9). The police officers then told Ms. Nally and Mr. Roberts that they had to leave. (*Id.* at 5, 9). Ms. Nally and Mr. Roberts obeyed that instruction and left. (*Id.* at 6). As they were leaving, Ms. Nally warned the officers that Mr. Spidell was going to take the refrigerator from the house. (*Id.* at 9).

Mr. Spidell left after Ms. Nally and Mr. Roberts, and the police officers left last.[1] (*See* doc. 69 at 6; doc. 65-2 at 4 (attesting that the officers remained at the house after Mr. Spidell, Ms. Nally, and Mr. Roberts left)). Later that day, Mr. Spidell returned to the house and ransacked it; he stole Ms. Daniel-Burt's pets, clothing, and refrigerator, vandalized the house, and destroyed all her perishable food. (Doc. 65-1 at 19, 22, 24–25; doc. 65-2 at 4).

## II.  DISCUSSION

Ms. Daniel-Burt asserts two claims against Corporal Stone: one claim of unlawful seizure of her home in violation of the Fourth Amendment and one claim of failure to intervene in Mr. Spidell's theft of her property. (Doc. 22 at 17–20; *see*

---

[1] Officer Stone attests that Mr. Spidell left the house before Ms. Nally and Mr. Roberts. (Doc. 65-2 at 4). Mr. Roberts, however, attests that Mr. Spidell was still at the house when he and Ms. Nally left. (Doc. 69 at 6). At summary judgment, the court must accept Mr. Roberts' version of events.

5

*also* doc. 68 at 1–2, 5–7). Corporal Stone seeks summary judgment on both claims, asserting that Ms. Daniel-Burt cannot produce any evidence that he violated her rights and, even if she could, he is entitled to qualified immunity because any violation was not clearly established. (Doc. 66 at 7–17).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted).

Qualified immunity "protects an officer unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quotation marks omitted). Only "the plainly incompetent" or those who knowingly violate federal law are not entitled to qualified immunity. *Id.* (quotation marks omitted).

Qualified immunity involves a burden shifting analysis. At the first step, the officer asserting entitlement to qualified immunity must demonstrate that "he acted within his discretionary authority." *Id.* (quotation marks omitted). If he can carry

that burden, the plaintiff must show that "the officer violated a constitutional right and" that "the right was clearly established at the time of the alleged violation." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019). The plaintiff must satisfy both requirements and the court may analyze them in either order. *Bradley v. Benton*, 10 F.4th 1232, 1238 (11th Cir. 2021).

Corporal Stone contends that he was acting within the scope of his discretionary authority because he was at the house in response to a call to the police for help. (Doc. 66 at 16–17). Ms. Daniel-Burt responds that he was not acting in his discretionary authority because under Alabama law, he was required to read the protection order. (Doc. 68 at 8–9).

A defendant's actions were within his discretionary authority if they were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). This requires the court to determine whether the defendant was "performing a legitimate job-related function (that is, pursuing a job-related goal), . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power." *Id.* at 1266. But "the inquiry is not whether it was within the defendant's authority to commit the allegedly

7

illegal act." *Id.* (quotation marks omitted). Instead, the court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.*

There can be no doubt that Corporal Stone was performing his job as a police officer when he went to Ms. Daniel-Burt's house in response to Ms. Nally's call to the police, when he (and the other officers) spoke with Ms. Nally, Mr. Roberts, and Mr. Spidell, and when he (or the other officers) made all of them leave the house. *See Harbert Int'l, Inc.*, 157 F.3d at 1282. And despite Ms. Daniel-Burt's assertion that he performed his job badly, his actions were also within the scope of his authority as a police officer. *See Holloman ex rel. Holloman*, 370 F.3d at 1265–66. Corporal Stone has carried his burden of showing that he was acting within the scope of his discretionary authority. The burden therefore shifts to Ms. Daniel-Burt to show that Corporal Stone violated her clearly established constitutional rights.

A violation is clearly established in one of three ways: (1) by a materially similar decision of the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court; (2) by "a broader, clearly established principle" that controls "the novel facts of the case"; or (3) in the rare situation in which the conduct

"so obviously violates the constitution that prior case law is unnecessary." *Powell*, 25 F.4th at 920 (quotation marks and alteration omitted).

### 1. Count Three: Unlawful Seizure under the Fourth Amendment

In Count Three as pleaded in the amended complaint, Ms. Daniel-Burt asserts that Corporal Stone seized her home by forcing "the occupants lawfully in possession of the home" to leave and allowing Mr. Spidell to burglarize it. (Doc. 22 at 17–18 ¶¶ 80–81). Ms. Daniel-Burt's summary judgment brief confirms this reading of the complaint. (*See* doc. 68 at 2, 5–7). The Fourth Amendment, made applicable to the States under the Fourteenth Amendment, protects people "against unreasonable searches and seizures." U.S. Const. amend. IV; *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992). A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal*, 506 U.S. at 61 (quotation marks omitted).

Corporal Stone contends that Ms. Daniel-Burt cannot show a clearly established violation of her Fourth Amendment right because there is no evidence that he was involved in Mr. Spidell's entry into her house or his theft or vandalism of her personal property; the only property Mr. Spidell removed in the presence of the police officers belonged to Mr. Spidell. (Doc. 66 at 9). Ms. Daniel-Burt does not dispute that the property Mr. Spidell took in the presence of the officers belonged to him or that he committed the burglary and vandalism after all the officers had left.

9

(*See* doc. 68 at 6–7). Instead, she contends that Corporal Stone interfered with her possessory interest in the house by unreasonably forcing a resident (Ms. Nally) and an authorized guest (Mr. Roberts) from the house, leaving the house vulnerable to Mr. Spidell's break-in later in the day. (*Id.*).

Ms. Daniel-Burt cannot carry her burden of showing that Corporal Stone violated a clearly established constitutional right by requiring Ms. Nally and Mr. Roberts to leave the house. The evidence indisputably establishes that Ms. Nally and Mr. Roberts lacked any documentation from Ms. Daniel-Burt giving them permission to be in her house and that Ms. Daniel-Burt was unavailable to confirm Ms. Nally and Mr. Roberts' statements that she had given them permission to stay there. (Doc. 65-2 at 3; doc. 69 at 9; doc. 65-1 at 16). Moreover, no one told the officers that any of the property Mr. Spidell had already removed or was in the process of removing belonged to Ms. Daniel-Burt. (Doc. 65-2 at 3; doc. 65-1 at 18). Ms. Burt has cited no law showing that, in these circumstances, an officer interferes with a homeowner's meaningful possessory interests by requiring everyone to leave the property. (*See generally* doc. 68 at 2–8). And this is not one of the rare situations where the officer's conduct "so obviously violates the constitution that prior case law is unnecessary." *Powell*, 25 F.4th at 920. Accordingly, Corporal Stone is entitled to qualified immunity from Count Three.

2. Count Four

In Count Four, Ms. Daniel-Burt asserts that Corporal Stone failed to intervene to stop Mr. Spidell's theft of property from her house. (Doc. 22 at 19–20 ¶ 90; *see also* doc. 68 at 7). Corporal Stone contends that he is entitled to summary judgment on this claim because there is no evidence he was present when Mr. Spidell burglarized Ms. Daniel-Burt's home. (Doc. 66 at 13–14). Ms. Daniel-Burt responds that Corporal Stone failed to intervene in Mr. Spidell's theft of her property by giving him permission to "pack up what he needed." (Doc. 68 at 7).

Ms. Daniel-Burt has not specified which constitutional right would require Corporal Stone to stop a theft of her property. (*See generally* doc. 68). But even if she had, there is no evidence that Mr. Spidell stole anything from Ms. Daniel-Burt while in Corporal Stone's presence. Although Mr. Spidell removed some boxes from a shed on her property and put them in his truck (doc. 69 at 6), Ms. Daniel-Burt concedes she does not know if anything in those boxes belonged to her (doc. 65-1 at 18). And in any event, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Because Ms. Daniel-Burt has presented no evidence showing a violation of her clearly established constitutional rights, the court **WILL GRANT** Corporal Stone's motion for summary judgment in his favor on Count Four.

## III.  CONCLUSION

The court **WILL GRANT** Corporal Stone's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in Corporal Stone's favor and against Ms. Daniel-Burt.

The court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this April 4, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE